UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

INTERNATIONAL BUSINESS MACHINES :
CORPORATION,
                        Plaintiff,   :

                -against-   :

THOMAS D. ROMEO, JR.
                        Defendant.   :
-----------------------------------------------------------X

**COMPLAINT**

Case No. _____

**12 CV 1985**

**JUDGE RAMOS**

Plaintiff, International Business Machines Corporation ("IBM"), by its attorneys, Putney, Twombly, Hall & Hirson LLP, as and for its Complaint against defendant, Thomas Romeo, Jr. ("Romeo"), alleges as follows:

### IDENTITY OF THE PARTIES

1.    IBM is a corporation duly organized under the laws of the State of New York, with its principal place of business in Armonk, New York.

2.    Defendant Romeo is an individual currently residing in Laurel, Maryland.

3.    Romeo was employed by IBM in a senior executive position as a Global Business Services Partner and Vice President in the Federal Healthcare Industry.

1

## JURISDICTION AND VENUE

4. This is a diversity matter between citizens of different states and the amount in controversy exceeds $75,000. Jurisdiction is appropriate under 28 U.S.C. § 1332(a)(1). Moreover, the parties have contractually agreed to the Jurisdiction of this Court by the terms of the contracts referred to below as the Equity Award Agreement dated June 8, 2009 ("EAA"), and the corresponding IBM 2001 Long-Term Performance Plan ("the IBM Plan") and Terms and Conditions of Your Equity Award: Effective June 8, 2009 ("Terms and Conditions").

5. Venue is proper in this Judicial District by the parties' agreements in the IBM Plan and the EAA.

## NATURE AND BACKGROUND OF THE ACTION

6. This is an action for monies due and owing to IBM by defendant.

7. During all relevant times herein, Romeo was a participant in the IBM Plan.

8. As stated in Section 1 thereof, termed "Objectives," the IBM Plan is "designed to attract, motivate and retain selected employees of, and other individuals providing services to, the Company. These objectives are accomplished by making long-term incentive and other awards under the Plan, thereby providing Participants with a proprietary interest in the growth and performance of the Company."

9. As stated in relevant part in Section 13(a) of the IBM Plan, entitled "Cancellation and Rescission of Awards":

> Unless the Award Agreement specifies otherwise, the Committee may cancel, rescind, suspend, withhold or otherwise limit or restrict any unexpired, unpaid, or deferred Awards at any time if the Participant is not in compliance with all applicable provisions of the Award Agreement and the Plan, or if the

2

Participant engages in any 'Detrimental Activity.' For purposes of this Section 13, "Detrimental Activity" shall include: (i) the rendering of services for any organization or engaging directly or indirectly in any business which is or becomes <u>competitive</u> with the Company, or which organization or business, or the rendering of services to such organization or business, is or becomes otherwise prejudicial to or in conflict with the interests of the Company; (ii) the disclosure to anyone outside the Company, or the use in other than the Company's business, without prior written authorization from the Company, of any confidential information or material, as defined in the Company's Agreement Regarding Confidential Information and Intellectual Property, relating to the business of the Company, acquired by the Participant either during or after employment with the Company; . . . (vi) any attempt directly or indirectly to induce any employee of the Company to be employed or perform services elsewhere, or any attempt directly or indirectly to solicit the trade or business of any current or prospective customer, supplier or partner of the Company; . . . ." (emphasis supplied).

10. In addition, Section 13(b) of the IBM Plan provides, in relevant part, that:

Upon exercise, payment or delivery pursuant to an Award, the Participant shall certify in a manner acceptable to the Company that he or she is in compliance with the terms and conditions of the Plan. In the event a Participant fails to comply with the provisions of paragraphs (a)(i)(viii) of this Section 13 prior to, or during the Rescission Period, then any exercise, payment or delivery may be rescinded within two years after such exercise, payment or delivery. In the event of any such rescission, the Participant shall pay to the Company the amount of any gain realized or payment received as a result of the rescinded exercise, payment or delivery, in such manner and on such terms and conditions as may be required, and the Company shall be entitled to set-off against the amount of any such gain any amount owed to the Participant by the Company. As used herein, Rescission Period shall mean that period of time established by the Committee which shall not be less than 6 months after any exercise, payment or delivery pursuant to an Award.

11. Defendant was offered an equity award grant pursuant to the EAA dated June 8, 2009.

12. By this EAA, IBM granted Romeo a series of Restricted Stock Units ("RSUs") to vest in the years 2010 through 2013.

13. Romeo accepted this EAA on August 9, 2009.

3

14. The EAA provides, inter alia, in a paragraph titled "Cancellation and Rescission" that "IBM may cancel, modify, rescind, suspend, withhold or otherwise limit or restrict this Award in accordance with the terms of the Plan, including, without limitation, canceling or rescinding this Award if you render services for a competitor prior to, or during the Rescission Period. You understand that the Rescission Period that has been established is 12 months."

15. As a condition of accepting this EAA, Romeo further agreed under the terms of the Award in a paragraph titled "Accept Your Award" "that by your acceptance of this Award, all Awards previously granted to you under the Plan or other Long-Term Performance Plans are subject to the "Cancellation and Rescission" section of this Agreement. . . ."

16. The EAA states that "Your participation in the Plan is voluntary."

17. The EAA by its terms incorporated both the Terms and Conditions and the IBM Plan into the Award.

18. The Terms and Conditions stipulated that "You agree that the cancellation and rescission provisions of the Plan and your Equity Award Agreement are reasonable and agree not to challenge the reasonableness of such provisions, even where forfeiture of your Award is the penalty for violation."

19. Romeo was granted and received RSUs and stock options under various Equity Award Agreements during his tenure with IBM, which became subject to the Cancellation and Rescission terms of the EAA dated June 8, 2009.

20. Defendant exercised 6,283 nonqualified stock options on October 5, 2009.

21. The value of these stock options when exercised was $132,637.88.

4

22. These stock options were exercised within the 12-month Rescission Period set forth under the EAA dated June 8, 2009.

23. In addition, Defendant received 316 RSUs on May 8, 2009.

24. The value of these RSUs when received was $32,165.64.

25. These RSUs were received within the 12-month Rescission Period set forth under the EAA dated June 8, 2009.

26. The total value of the gain received by Defendant during the Rescission Period and subject to rescission is $164,803.52.

27. Recipients of awards under the IBM Plan, Section 15(e) thereof, agree to the exclusive jurisdiction and venue of the federal or state courts of New York, County of Westchester, to resolve any and all issues that may arise out of or relate to the Plan and the EAA.

28. Similarly the Terms and Conditions document incorporated into the EAA, and referred to in paragraph 17 hereof, specifies the same jurisdiction and venue.

29. The IBM Plan specifies in Section 15(f) thereof, that if IBM prevails in an action to enforce the IBM Plan, the Plan participant such as Romeo "shall pay all costs and expenses incurred by the Company in connection with that action, including reasonable attorneys' fees . . . ."

30. Similarly, the "Terms and Conditions" document incorporated into the EAA, and referred to in paragraph 17 hereof contains the same language regarding costs, expenses and fees.

## AS AND FOR PLAINTIFF'S FIRST CAUSE OF ACTION

31.     Plaintiff repeats and realleges each of the allegations contained in Paragraphs 1 through 30 hereof, inclusive, as though more fully stated herein.

32.     On or about November 4, 2009, Romeo voluntarily resigned as an employee of IBM.

33.     Under the explicit terms of the IBM Plan, if Defendant chose to join a competitor of IBM within the Rescission Period of the EAA, he would forfeit the monetary value of all Awards under the IBM Plans.

34.     The Rescission Period established under the EAA dated June 8, 2009, was 12-months "after any exercise, payment or delivery pursuant to an Award".

35.     Defendant was aware of this rescission provision at the time he accepted his EAA dated June 8, 2009.

36.     Shortly after his resignation, and within the Rescission Period, Romeo commenced employment with Accenture LTD ("Accenture").

37.     Accenture is a competitor of IBM.

38.     Romeo's employment with Accenture constitutes Detrimental Activity under Section 13(a)(i) of the IBM Plan.

39.     By virtue of Romeo's employment with Accenture within the Rescission Period, under the conditions of the Awards, and pursuant to the IBM Plan and the EAA, IBM was entitled to and did rescind any awards made to Romeo during such period.

40. Thus, by letter dated November 20, 2009, IBM put Defendant on notice that all equity awards exercised or received within the 12 months preceding his engaging in "Detrimental Activity" were subject to rescission in the amount of $164,804.00.

41. IBM made due demand for payment by Romeo in the amount of $164,803.52, representing the total amount gained by Romeo through the aforesaid stock option exercises and RSU receipts.

42. To date, Romeo has failed and refused to make the requested payment to IBM, though duly demanded by IBM.

43. Accordingly, there is due and owing from Romeo to IBM the amount of $164,803.52.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendant in the amount of $164,803.52, as well as costs, interest, and attorneys' fees in an amount to be determined by the Court, and such other, further and different relief this Court deems just and proper.

Dated:  New York, New York
        March 16, 2012

PUTNEY, TWOMBLY, HALL & HIRSON LLP
Attorneys for Plaintiff

By: _____
Jerome P. Coleman
A member of the firm
521 Fifth Avenue
New York, NY 10175
(212) 682-0020